In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1417

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MILFORD J. CLARK,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 11-cr-151 — **Sarah Evans Barker**, *Judge*.

ARGUED APRIL 15, 2014 — DECIDED DECEMBER 19, 2014

Before RIPPLE and WILLIAMS, *Circuit Judges*, and ST. EVE,
*District Judge*[*]

WILLIAMS, *Circuit Judge*. Milford Clark strolled into a
credit union wearing a two-tone baseball hat and sunglasses,
walked out, and got into his blue Ford Crown Victoria. Five

[*] Of the United States District Court for the Northern District of Illinois,
sitting by designation.

days later, a man fitting Clark's description robbed a bank
wearing a two-tone baseball hat and sunglasses and left in a
blue Ford Crown Victoria. Authorities interviewed and ul-
timately arrested Clark for the robbery. Clark wanted to rep-
resent himself and the magistrate judge found that Clark
waived his right to counsel for proceedings before that court.
The district court considered the issue anew on a motion
from the government and asked Clark questions about his
decision to proceed *pro se*. Ultimately, Clark decided against
self-representation. He was convicted, and now argues on
appeal that the district court infringed on his Sixth Amend-
ment right to proceed *pro se* because it improperly reconsid-
ered an issue already decided by the magistrate judge. We
reject this argument because the district court could analyze
whether Clark's waiver was valid since the magistrate
judge's ruling was limited to "this juncture" of the proceed-
ings, namely Clark's initial appearance. Moreover, the addi-
tion of DNA evidence to the government's case gave the
court reason to question whether Clark fully understood the
perils of going *pro se* and the court properly alerted Clark
about how that evidence changed the nature of the case. We
also find the credit union evidence was properly admitted
for a non-propensity purpose, to establish Clark's identity.
Though we are troubled by the government's introduction of
more evidence than necessary to show Clark's identity, in-
cluding a video and witness testimony that were used to
characterize Clark's actions as "casing" the credit union, any
errors in introducing more than just a still photo and failing
to weigh the probative and prejudicial values of the evidence
on the record were harmless since Clark met the physical de-
scription of the robber and his DNA was found at the Bank.
Therefore we affirm.

## I. BACKGROUND

On April 27, 2010, a man robbed the Regions Bank in Indianapolis at gunpoint while wearing a two-tone hat, dark sunglasses, and a bandana covering the lower half of his face. He threw three plastic grocery bags at the teller and ordered him to fill the bags with money. The teller filled one, which the robber took and fled, leaving the other two behind. The robber was described as a "stockier" Caucasian male, approximately 5′9″ between 40-50 years old. Surveillance video from the drive-thru showed a blue car drive away. Early the next morning, police found a blue Ford Crown Victoria less than half a mile from the Bank. An eyewitness confirmed that it was the same car she had seen around the Bank right before the robbery. Both the car and the plastic bags at the Bank were swabbed for DNA.

Five days earlier, Larry England visited a Harvesters Credit Union in Indianapolis, asked for a deposit slip, and left without conducting any business. A few minutes later, England's friend, Clark, got out of his blue Ford Crown Victoria and went into the same Harvesters. Clark, then fifty-six years old, is a Caucasian male who was wearing a T-shirt with sunglasses hanging off it and a two-tone cap. He asked for a deposit slip, was told the Harvesters did not use deposit slips, and left without conducting any business. Finding the acts troubling, Harvesters investigated and reported the incident to the Sheriff's Department.

The similarities between the Harvesters incident and the robbery led the Sheriff to Clark. Clark identified himself on the Harvesters video and it was later determined that some of Clark's DNA was in the car and on the plastic bags left at the Bank. He was arrested and charged with bank robbery

and using, carrying, and brandishing a firearm during and in relation to a crime of violence.

In the first pretrial hearing, Clark's appointed attorney told the magistrate judge that Clark wanted to represent himself. The magistrate judge explained the counts in the indictment, potential sentences, and what happens during a jury trial. The magistrate judge then inquired into Clark's educational and legal background, his age, personal and criminal history, and cautioned Clark about the perils of proceeding *pro se*. When Clark insisted that he wanted to represent himself, the magistrate judge found the waiver of counsel valid and granted the motion "at this point, this juncture." But he also appointed a federal defender as standby counsel so that "at any time … if you desire … [he could] take over."

Before the district court, the government filed a "Motion for Hearing Relating to Self-Representation" noting that it "anticipates offering evidence at trial of DNA comparisons from two different locations." The government admitted that Clark "engage[d] in a colloquy with the presiding Magistrate Judge" regarding self-representation, but stated "it is vitally important that the Defendant's decision to forgo counsel be made with all of the appropriate, formal cautions by the trial court of record." The district court granted the motion. At the hearing, the district court judge inquired anew into much of the same ground the magistrate judge had covered. For the first time, the court also covered DNA evidence, noting it "requires some knowledge of that science" and "that's tricky evidence unless you're a scientist who understands DNA, or unless you've done substantial study." Clark responded by saying he was "reconsidering" self-

representation, but "I think I'm going to go *pro se*." But, he chose to wait until the end of the hearing to decide for sure.

The court next granted the government's pretrial motion and found evidence from the Harvesters incident was admissible non-propensity evidence that went to establish Clark's identity. The court rejected Clark's *pro se* objection to the introduction of the evidence. It then returned to Clark's self-representation. This time, Clark changed his mind and accepted the appointment of counsel. Clark proceeded to trial, where the Harvesters evidence came in and he was convicted on both counts. This timely appeal follows.

## II. ANALYSIS

Clark asserts the district court's decision to revisit his waiver was an unconstitutional infringement on the initial valid waiver made to the magistrate judge. Clark also argues the Harvesters evidence violated Federal Rule of Evidence 404(b) because it did not go towards establishing identity, was more prejudicial than probative, and the government improperly used it to argue propensity.

### A. Clark Was Not Deprived His Sixth Amendment Right to Proceed *Pro Se*

Clark argues that the district court should have accepted his first waiver of counsel as valid and that his Sixth Amendment right was violated when it revisited the issue. We disagree because the magistrate judge's determination was limited to the initial proceeding, so the district court properly considered the issue. Moreover, the addition of the DNA evidence raised the possibility that the initial waiver—even if unequivocal—was no longer knowing, and the district court needed to bring that to Clark's attention.

Before addressing the merits, we briefly note Clark's well-reasoned argument about our standard of review. We have recently said we review a defendant's waiver of his right to counsel for an abuse of discretion. *See, e.g., United States v. Eads*, 729 F.3d 769, 775 (7th Cir. 2013). However, as Clark points out, there is also a line of cases in this circuit, which has not been overruled, stating we review these decisions *de novo. See, e.g., United States v. James*, 487 F.3d 518, 527 (7th Cir. 2007); *United States v. Hoskins*, 243 F.3d 407, 410 (7th Cir. 2001). Since Clark fails under either standard, we do not decide the issue here. Additionally, we do not need to make a determination as to whether a magistrate judge can find that a defendant has properly waived counsel or whether the district court erred here in purportedly reconsidering the magistrate judge's finding of waiver without an objection from the government because, as we discuss below, the magistrate's finding was limited.

The seminal case on a defendant's right to proceed *pro se* is *Faretta v. California*, 422 U.S. 806 (1975), in which the Court held that a state may not compel defendants in criminal trials to be represented by attorneys. A defendant may invoke his right to proceed *pro se* if he "knowingly and intelligently" waives the right to counsel. *Id.* at 835 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464–65 (1938) and citing *Von Moltke v. Gillies*, 332 U.S. 708, 723–24 (1948) (Black, J., plurality opinion)). The waiver also must be voluntary and unequivocal. *United States v. Volpentesta*, 727 F.3d 666, 676 (7th Cir. 2013); *United States v. Oakey*, 853 F.2d 551, 553 (7th Cir. 1988). To assure the right is properly waived, we have stressed "the need for a thorough and formal inquiry in which the court 'asks the necessary questions and imparts the necessary information.'" *United States v. Sandles*, 23 F.3d 1121, 1126 (7th

Cir. 1994) (internal citations omitted). This has commonly become known as a *Faretta* colloquy. As the Court noted in *Von Moltke*, "a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. … A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." 332 U.S. at 723–24 (Black, J., plurality opinion).

Clark argues *Faretta* held that a court may not revisit the issue since the Supreme Court said a knowing and intelligent waiver "must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Faretta*, 422 U.S. at 834 (quoting *Illinois v. Allen*, 397 U.S. 337, 350–51 (1970) (Brennan, J., concurring)). We do not read *Faretta* that way and also reject the premise of Clark's argument, namely, that the district court revisited the issue. The magistrate judge's ruling was that Clark's waiver of counsel was valid "at this point, this juncture." If the district court had not conducted a *Faretta* colloquy, it is likely that Clark would now be arguing that the magistrate judge's ruling was unclear and that Clark did not know whether his waiver was valid for the entire proceedings or whether he had to revisit the issue later. Instead, the district court judge took it upon herself to ensure that the waiver was valid and not to accept the limited finding. The role of determining whether the waiver was valid falls squarely on the judge, and she took that role seriously. *Von Moltke*, 332 U.S. at 723–24. We commend the district court in her efforts to protect that right and make sure it was properly invoked.

Further supporting our conclusion that the district court properly delved into the waiver issue is that the nature of the case had changed with the government's statement that it was anticipating that DNA evidence was going to be introduced. This is not necessarily the type of case with "a substantial change in circumstances [that] will *require* the district court to inquire whether the defendant wishes to revoke his earlier waiver." *United States v. Fazzini*, 871 F.2d 635, 643 (7th Cir. 1989) (emphasis added); *see also United States v. Erskine*, 355 F.3d 1161, 1171 (9th Cir. 2004) (finding change in potential sentences required renewed colloquy); *Panagos v. United States*, 324 F.2d 764, 765 (10th Cir. 1963) (noting "unreasonable amount of" time between colloquies was substantial change); *Davis v. United States*, 226 F.2d 834, 840 (8th Cir. 1955) (finding "an unreasonable lapse of time, newly discovered evidence which might require or justify advice of counsel, new charges brought, a request from the defendant, or similar circumstances" constitute a substantial change).

However, just because she was not required to revisit the waiver does not mean the district court judge was prohibited from doing so. Clark has not pointed us to, nor could we find, a single case in which the court erred by conducting multiple *Faretta* colloquies. This court has affirmed the use of multiple *Faretta* colloquies in a number of cases. *See, e.g., United States v. England*, 507 F.3d 581, 586 (7th Cir. 2007) (questioning by "both the magistrate judge and the district court adequately informed England of exactly what he was waiving"); *see also United States v. Oreye*, 263 F.3d 669, 672 (7th Cir. 2001). Here, the characteristics of the trial changed when the government wrote it "anticipates offering evidence at trial of DNA comparisons from two different locations." The district court might have thought that an important ab-

sence from the magistrate judge's colloquy which merited a renewed inquiry, and it conducted extensive questioning on how DNA and expert testimony would alter the proceedings. *Cf. United States v. Hantzis*, 625 F.3d 575, 581–82 (9th Cir. 2010) (finding no additional *Faretta* inquiry required since *pro se* defendant "knew what the expert would testify to" regarding tests he performed on drug evidence). This change could very well have affected Clark's understanding of the dangers of self-representation because expert testimony often makes the trial more factually and procedurally complicated than it otherwise would be. The court was right to make sure Clark understood the import of this new evidence and testimony. Indeed, it is rare that all of the relevant information that should go into a defendant's decision to proceed *pro se* will be available during the initial hearing in front of the magistrate judge. In the normal case, the criminal defendant will not yet have received discovery, reviewed or prepared motions in limine, or even necessarily come to know all of his co-defendants. The best practice would be to follow the example of the district court judge in this case and revisit the waiver issue, regardless of any proceedings in front of the magistrate judge, to ensure that the decision to proceed *pro se* truly is knowing, intelligent, voluntary and unequivocal.

In affirming the district court's actions, we reject Clark's contention that this DNA inquiry impermissibly took into account his "technical legal knowledge," which is "not relevant to an assessment of [a defendant's] knowing exercise of the right to defend himself." *Faretta*, 422 U.S. at 836. The judge's statements were no more than warnings about the nature of the proceedings, akin to discussing the purpose of opening statements, possible strategies for cross-

examination, or the burdens of proof, all of which were part of a line of inquiry we called "an impressive illustration." *England*, 507 F.3d at 587. DNA analysis does not require legal knowledge—as the judge noted, it requires scientific knowledge—and the court was also assuring itself that Clark understood the complexities that come with expert testimony. Had the court denied the waiver because Clark could not state what qualifications an expert must possess or what evidence is admissible, we would have a different issue. *See Faretta*, 422 U.S. at 836 (finding it error to reject waiver because of "how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California Code provisions that govern challenges of potential jurors on *voir dire*"). That is not the case here. The court did not err by conducting its inquiry or discussing the impact of the DNA evidence on the mechanics of the trial.

### B. No Abuse of Discretion or Harmful Error In Admission of Harvesters Evidence

Clark also argues the court erred in admitting, without analysis, the Harvesters Credit Union evidence. He contends it was not properly admitted to show his "identity" and the government violated Federal Rule of Evidence 404(b) by using it for improper propensity purposes. However, because the identity of the bank robber was the key determination at issue, the physical similarities between the man shown at Harvesters and the Bank matched up, and any error was harmless, we affirm.

The government argues that Clark waived this argument because he only objected to use of the Harvesters photos, rather than all of the evidence, in his *pro se* pretrial objection. Since courts should liberally construe *pro se* briefs, *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976), and because Clark broadly objected to the "governments 404B [sic] motion," we find no waiver. Moreover, because a ruling had already been made, Clark's counsel did not have to renew his objection to admission of the evidence at trial, and so there was no forfeiture or waiver. *See United States v. Acox*, 595 F.3d 729, 733 (7th Cir. 2010) (citing Fed. R. Evid. 103(a) and *Wilson v. Williams*, 182 F.3d 562, 565–67 (7th Cir. 1999) (en banc)). Therefore, we review for abuse of discretion. *United States v. Gomez*, 763 F.3d 845, 858 (7th Cir. 2014) (en banc).

Rule 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts for the purpose of proving a person's character or propensity to behave in a certain way, but permits the use of this evidence for other purposes, including identity. *See id.* at 852. Since the district court's ruling, we have abandoned our old four-part test of admissibility under Rule 404(b). *Id.* at 852–53. Under our new analysis, "[t]he proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way … through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case." *Id.* at 860. If that is done, the court must "assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice," and this "balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." *Id.*

Clark said he did not rob the Bank, and so the government sought to introduce evidence rebutting that contention.

The government produced evidence from Harvesters that a stocky Caucasian male, around 5′10″ in his 40s or 50s wearing a two-tone baseball hat and sunglasses walked in and eventually left in a blue Ford Crown Victoria. It also produced evidence from the Bank that a stocky Caucasian male, roughly 5′9″ in his 40s or 50s entered with a two-tone baseball hat and sunglasses and left in a blue Ford Crown Victoria. What makes the evidence especially relevant and probative of identity is Clark's admission that he was the individual on the Harvesters video. So, knowing that was him, the jury could compare the physical descriptions and images of Clark as he appeared at Harvesters and the man in the Bank and determine whether they matched up. The evidence went towards identity, which is a non-propensity purpose, and was established through a non-propensity chain of reasoning. *See, e.g.*, *United States v. Robinson*, 161 F.3d 463, 466–68 (7th Cir. 1998) (finding similarities between defendant's headwear, clothes, accessories, and getaway car from bank robberies, among other things, made acts probative of identity); *United States v. Powers*, 978 F.2d 354, 361 (7th Cir. 1992) (noting similarities between defendant's hat, clothes, accessories, among other things, went towards identity in bank robbery case); *cf. United States v. Seals*, 419 F.3d 600, 607 (7th Cir. 2005) (finding "generic" identification evidence that defendants "disguise[d] their identities, carr[ied] firearms, and use[d] a stolen vehicle" inadmissible because of difference in disguises, number of robbers and guns used).

However, we have concerns about the prejudicial effect of some of the evidence. If it was only being admitted for identity purposes and to compare the man at Harvesters with the man at the Bank, there was no need to admit any evidence other than the picture of Clark at Harvesters. The

jury would not even have known that the picture was taken at a credit union since there was nothing in the picture that would have allowed the jurors to identify the generic look-ing lobby as part of a financial institution. The video, on the other hand, showed the actions the government later termed as "casing," namely Clark looking around the room before leaving. Moreover, there was no reason under the govern-ment's rationale to have any employee testify that they thought Clark was "casing" Harvesters or even to describe his actions once inside. None of that was relevant to identity. A witness could have laid the foundation for the picture of Clark inside and images of the car outside without getting into the thorny and problematic testimony about what Clark did inside Harvesters. There was a risk of prejudice by in-troducing the witness testimony and videos since the jury could have taken it as propensity evidence, namely that Clark was considering robbing Harvesters before subse-quently robbing the Bank, and therefore had a propensity to rob financial institutions. As Clark points out, even if the ev-idence was properly admitted in the first instance, the gov-ernment took advantage of this overkill by arguing that Clark's visit to Harvesters amounted to "suspicious behav-ior," and Harvesters employees thought he was "casing" to see if it "might be a good credit union for a bank robbery." *See United States v. Richards*, 719 F.3d 746, 763–64 (7th Cir. 2013) (noting properly admitted evidence cannot then be used "in support of some other [improper] argument or in-ference," especially a propensity argument).

Even though this is problematic, Clark put his identity at issue by taking the stand and testifying that he did not rob the Bank, *see Gomez*, 763 F.3d at 857, 860, and we do not find that the prejudicial value substantially outweighed the pro-

bative value of this evidence. Fed. R. Evid. 404(b); *see also, e.g., United States v. Price*, 516 F.3d 597, 603–04 (7th Cir. 2008) (finding no error in admitting evidence of bank robbery five months prior); *Robinson*, 161 F.3d at 468. Moreover, there was a limiting instruction given to the jury about the use of the 404(b) evidence[1] and such instructions help "in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence." *United States v. Denberg*, 212 F.3d 987, 994 (7th Cir. 2000).

Clark also correctly asserts that the district court did not adequately spell out its reasons for admitting the Rule 404(b) evidence. The district court told Clark that the government has "narrowed the purposes of the evidence that [it] intend[s] to present to basically prove identity. … [A]pparently [it has] witnesses who can put you there, and other evidence, that at that time you were wearing a distinctive baseball cap, and were seen in [the Victoria] by credit union employees." The court understood the non-propensity purpose for which the evidence was being admitted and its relevance. However, it did not explicitly weigh the probative and prejudicial values on the record. Had the district court explicitly balanced the prejudicial effects and probative value on the record, as we have done here, it might have had the same concerns we have expressed and concluded that the volume of identifying evidence was unnecessary and overly prejudi-

---

[1] The judge told the jury: "You have heard evidence of wrongful acts of the defendant other than those charged in the indictment. You may consider this evidence only on issues of opportunity, preparation, plan, knowledge, or identity. You must consider this evidence only for these limited purposes."

cial. But it did not, which was an error. So now we ask whether the error was harmless. *See United States v. Miller*, 688 F.3d 322, 328–30 (7th Cir. 2012) (finding error in not weighing prejudice and probative values on the record, but finding error harmless); *United States v. Beck*, 625 F.3d 410, 417 (7th Cir. 2010) (conducting harmless error test after finding evidence substantially more prejudicial than probative). The test is, "whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." *Gomez*, 763 F.3d at 863 (internal quotation omitted). Since the DNA evidence and the fact that Clark fit the description of the robber provided strong evidence of guilt, we cannot say the prosecution's case would have been significantly less persuasive had the evidence been excluded. To the extent that the prejudicial effect substantially outweighed the probative value and the court's failure to weigh those effects on the record was error, any error was harmless.

### III. CONCLUSION

For these reasons, we AFFIRM the judgment of the district court.