In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-2312
UNITED STATES OF AMERICA,
 Plaintiff-Appellee,
 v.

QWANELL S. JONES,
 Defendant-Appellant.
 ____________________

 Appeal from the United States District Court for the
 Central District of Illinois.
 No. 3:20-cr-30045 — Michael M. Mihm, Judge.
 ____________________

 ARGUED APRIL 12, 2023 — DECIDED APRIL 24, 2023
 ____________________

 Before SCUDDER, KIRSCH, and LEE, Circuit Judges.
 SCUDDER, Circuit Judge. Facing federal charges, Qwanell
Jones exercised his Sixth Amendment right to represent him-
self under Faretta v. California, 422 U.S. 806 (1975). Jones now
claims that the district court should have prevented him from
doing so. But the district court rightly concluded that he had
knowingly and voluntarily waived his right to counsel. We
aﬃrm.
2 No. 22-2312

 I
 A
 Police oﬃcers in Raymond, Illinois, discovered a loaded
ﬁrearm, cocaine, and more than 800 methamphetamine pills
on Jones’s person and in his car during a traﬃc stop in March
2020. Federal charges followed for various drug and ﬁrearm
oﬀenses.
 Jones wanted to mount frivolous challenges to the district
court’s jurisdiction. But counsel, bound by his ethical obliga-
tions, declined to make those arguments on Jones’s behalf. See
United States v. Schneider, 910 F.2d 1569, 1570 (7th Cir. 1990).
So Jones sought to represent himself.
 Magistrate Judge Eric Long conducted a Faretta colloquy
to verify Jones’s decision to waive counsel in April 2021. The
colloquy—covering Jones’s age, education, mental health,
and prior legal experiences—was extensive by any measure.
After discussing his background, Jones conﬁrmed his
understanding of the charges against him. He claimed to have
assisted other defendants in court and agreed that he could
follow the Federal Rules of Evidence and Criminal Procedure.
He also said that he understood the perils of self-
representation, which Magistrate Judge Long explained and
stressed in detail. The court therefore allowed Jones to
represent himself and appointed his public defender as
standby counsel.
 Jones spent the months leading up to trial challenging the
district court’s jurisdiction in multiple, frivolous ﬁlings. He
ﬁled several motions himself and improperly arranged for a
nonlawyer, Sharon Renee Lloyd, to submit many others for
him.
No.22-2312 3

 Jones and Lloyd used these ﬁlings to advance arguments
grounded in the sovereign-citizen movement. Like many
sovereign citizens, Jones believes he is not subject to the
federal government’s jurisdiction. See United States v.
Jonassen, 759 F.3d 653, 657 n.2 (7th Cir. 2014). Indeed, he seems
to think the government had sought to hold him pursuant to
what he calls its commercial jurisdiction. To secure his own
release, Jones ﬁled fraudulent ﬁnancial documents that
purported to settle unpaid debts. See El v. AmeriCredit Fin.
Servs., 710 F.3d 748, 750 (7th Cir. 2013). He also held himself
out as a “descendant[ ] of the Moors of North Africa,” a group
he believed was shielded by treaty from the exercise of
jurisdiction by the United States. El v. Sheboygan, No. 18-cv-
293, 2018 LEXIS 88727, at *6 (E.D. Wis. May 29, 2018)
(discussing beliefs held by certain sovereign citizens).
Needless to say, none of these arguments had any
“conceivable validity in American law.” Jonassen, 759 F.3d at
657 n.2 (quoting Schneider, 910 F.2d at 1570).
 Concerned with the substance and incoherence of the ﬁl-
ings, the government requested a second Faretta colloquy.
This time around, and on the eve of trial in November 2021,
District Judge Michael Mihm conducted the colloquy. Jones
proved markedly less cooperative in this second colloquy. He
insisted he did not “consent” to jurisdiction and would not
participate in his trial. While he acknowledged understand-
ing the “letter” of the charges against him, he also expressed
confusion about whether the proceedings were criminal, civil,
administrative, or even “statutory maritime.” But after re-
viewing the indictment and Jones’s past experiences with
criminal law, Judge Mihm concluded that Jones’s waiver of
counsel remained valid.
4 No. 22-2312

 B
 True to his word, Jones declined to participate meaning-
fully in his trial. He did not deliver opening or closing state-
ments, cross-examine witnesses, or lodge any evidentiary or
other objections. Although he attempted to testify, his testi-
mony had no bearing on the charges against him. The jury
convicted Jones of all charges, and the district court sentenced
him to 138 months’ imprisonment.
 Jones appeals, now represented by counsel. The sole issue
before us is whether the district court erred in allowing him
to represent himself.
 II
 The Sixth Amendment protects a criminal defendant’s
right to represent himself, so long as he makes a knowing and
voluntary choice to forego counsel. See Faretta, 422 U.S. at
831–35. In assessing whether a defendant knowingly and vol-
untarily waived his right to counsel, we take our own fresh
look at the district court’s legal determinations and review its
factual ﬁndings for clear error. See United States v. Johnson, 980
F.3d 570, 576 (7th Cir. 2020). Counsel plays a vital role in crim-
inal proceedings, so we “indulge every reasonable presump-
tion against the waiver.” United States v. Belanger, 936 F.2d 916,
919 (7th Cir. 1991) (quoting Wilks v. Israel, 627 F.2d 32, 35 (7th
Cir. 1980)).
 Four factors guide our analysis. We look ﬁrst to the extent
of the district court’s formal inquiry into the defendant’s
waiver of counsel, if any; next to other evidence in the record
showing the defendant understood the dangers and
disadvantages of self-representation; then to the defendant’s
background and experience; and ﬁnally to the context of the
No.22-2312 5

choice to proceed pro se. See United States v. Sandles, 23 F.3d
1121, 1126 (7th Cir. 1994).
 A
 Each of these factors shows that Jones chose to represent
himself “with eyes open.” Faretta, 422 U.S. at 835 (quoting Ad-
ams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)).
His waiver was valid.
 Return to the two extensive Faretta colloquies. Magistrate
Judge Long and Judge Mihm covered the proper topics by
asking Jones about his “age and level of education” and by
“inform[ing] him of the crimes with which he was charged,
the nature of those charges, and the possible sentences they
carry.” Belanger, 936 F.2d at 918.
 Most importantly, the two judges took care to explain and
emphasize the perils and “pitfalls of self-representation.” San-
dles, 23 F.3d at 1127. Magistrate Judge Long told Jones that
“it’s just not considered a good idea for a person in your situ-
ation to represent yourself,” especially when the appointed
public defender was “an experienced trial attorney” who does
“good work.” Going a step further, Magistrate Judge Long
identiﬁed speciﬁc situations where Jones would struggle
without a lawyer, including selecting jurors, reviewing pro-
posed jury instructions, preserving issues for appeal, and tai-
loring arguments for judges and jurors. Jones would need to
grapple with his inexperience in each of these areas while
managing the understandable emotional consequences for
anyone facing a criminal conviction and a potentially lengthy
prison sentence.
 Judge Mihm, too, underscored that Jones would not only
be “on [his] own” if he waived counsel, but he would also be
6 No. 22-2312

unable to solicit advice from the district court and would be
subject to procedural and evidentiary rules that would “not
be relaxed for [his] beneﬁt.” For all those reasons, Judge
Mihm “strongly urge[d]” Jones to accept counsel and recog-
nize that “a trained lawyer would defend [him] far better than
[he] could defend [himself].”
 Jones seemed to comprehend the risks, and it was
reasonable for the district court to reach the same conclusion.
In both colloquies, Jones indicated he understood the
elements of the charges, his sentencing exposure, and the
various disadvantages of self-representation. Before both
colloquies and during a hearing when Jones ﬁrst asked to
represent himself, he told the district court that he understood
the penalties he faced and wished to represent himself despite
the disadvantages of proceeding pro se. These admissions
“weigh heavily on the side of ﬁnding a waiver.” United States
v. Moya-Gomez, 860 F.2d 706, 736 (7th Cir. 1988).
 The context of the waiver also matters. Jones “ﬁred his trial
counsel (at least in part) in order to make his sovereign-citizen
defense that the [district] court lacked jurisdiction over him.”
United States v. Banks, 828 F.3d 609, 615 (7th Cir. 2016). No
doubt his choice was ill-advised. But it was nevertheless a lit-
igation tactic that further suggests his waiver was knowing
and voluntary. See id.; United States v. England, 507 F.3d 581,
588 (7th Cir. 2007) (“A waiver is likely knowing and voluntary
if the defendant gave it for strategic reasons or after repeat-
edly rejecting the assistance of counsel.”).
 Jones’s background and experience add more support to
the district court’s determination that his waiver was know-
ing and voluntary. Nobody has ever questioned whether
Jones was competent to stand trial. His criminal record, which
No.22-2312 7

included three felony convictions and an eight-year prison
sentence, surely supplied some knowledge of the gravity of
the situation he faced with this particular set of charges. See
United States v. Volpentesta, 727 F.3d 666, 677–78 (7th Cir.
2013). And although Jones had never represented himself be-
fore, he was 26 at the time of the proceedings, had a high
school education, and claimed to have at least some under-
standing of evidentiary and procedural rules. See id.
 Of course, Jones participated only minimally at trial, and
his brief eﬀort to testify went poorly. See Sandles, 23 F.3d at
1128 (considering the defendant’s performance at trial). But
his “general inaction” was consistent with the strategic deci-
sion to pursue a sovereign-citizen defense. Banks, 828 F.3d at
616. “The fact that that strategy was unwise, without more, is
irrelevant.” Id.
 B
 Jones views the record in a very diﬀerent light. First and
foremost, he tells us that his legal theories were so outlandish
and the district court’s colloquies so deﬁcient that he could
not have knowingly and voluntarily waived his right to coun-
sel. Not so, in our view.
 Remember that Jones’s contentions—and all of his
purported confusion about the nature of the proceedings—
were part and parcel of a broader defense that appealed to
sovereign-citizen beliefs. Pursuing that defense put the
district court in a delicate spot. On the one hand, sovereign-
citizen theories are not just “bizarre,” Jonassen, 759 F.3d at 660,
they also reﬂect misunderstandings about criminal
jurisdiction. But there is no bright line rule barring sovereign
citizens from representing themselves. To the contrary, a
8 No. 22-2312

defendant like Jones can make a clear-eyed, tactical decision
to mount a sovereign-citizen defense. See Banks, 828 F.3d at
615; see also Jonassen, 759 F.3d at 660–61 & n.4 (concluding
that a sovereign citizen was competent to stand trial and, by
extension, able to represent himself). Although the defense is
almost certain to fail, the Sixth Amendment protects the right
of defendants to “go down in ﬂames if they wish[ ].” United
States v. Reed, 668 F.3d 978, 986 (8th Cir. 2012) (quoting United
States v. Johnson, 610 F.3d 1138, 1140 (9th Cir. 2010)); see also
Jonassen, 759 F.3d at 660 (“Criminal defendants often insist on
asserting defenses with little basis in the law, particularly
where, as here, there is substantial evidence of their guilt.”).
 In the sovereign-citizen context, the district court’s front-
row perspective is all the more valuable. And in this case two
diﬀerent judges, drawing from extensive colloquies, con-
cluded that Jones had knowingly and voluntarily waived his
right to counsel despite his adherence to the sovereign-citizen
movement. We agree.
 Jones also identiﬁes what he believes are two major deﬁ-
ciencies in the Faretta colloquies. When Judge Mihm and Mag-
istrate Judge Long asked Jones if he understood their ques-
tions and admonitions, he frequently responded either by
saying “yes” or that he “overstood.” When pressed by Judge
Mihm, Jones indicated that “overstood” meant “being
aware.” Judge Mihm therefore concluded that the word
meant “yes.” Jones now tells us that the use of the word “over-
stood” should have sounded alarm bells for both judges about
whether he truly comprehended what was happening. But
the district court’s determination that overstood means “yes”
is a factual ﬁnding which we review for clear error. See United
States v. Balsiger, 910 F.3d 942, 952 (7th Cir. 2018). And we
No.22-2312 9

cannot say we have a “deﬁnite and ﬁrm conviction that a mis-
take has been made.” Id. at 956 (quoting United States v.
Radziszewski, 474 F.3d 480, 486 (7th Cir. 2007)).
 Jones further believes that Judge Mihm should have
warned him that he could not rely on the ﬁlings of a nonlaw-
yer like Sharon Renee Lloyd. Without that warning, he claims
he could not have appreciated the disadvantages of pro se
representation. But we do not mandate any magic words for
a Faretta colloquy. See United States v. Vizcarra-Millan, 15 F.4th
473, 486 (7th Cir. 2021). Indeed, we do not require a formal
Faretta colloquy at all if the record adequately establishes that
the defendant knowingly and voluntarily waived his right to
counsel. See id. at 486 n.1. In this case, Magistrate Judge Long
and Judge Mihm explained the dangers of self-representation
at length and in detail. That was enough to help Jones make
his choice knowingly and voluntarily. Neither can Jones claim
to have been caught oﬀ guard by the fact that he could not use
a nonlawyer to ﬁle his papers: the district court told Jones re-
peatedly in docket entries and in other hearings that Lloyd
had no authority to submit ﬁlings for him.
 Putting aside the suﬃciency of the colloquies, Jones con-
tends that the district court should have rescinded his waiver
of counsel when he refused to participate in trial. Here, too,
we disagree. We have only allowed district courts to rescind a
defendant’s waiver of counsel when he obstructs the proceed-
ings, making it “practically impossible to proceed.” United
States v. Brock, 159 F.3d 1077, 1080–81 (7th Cir. 1998); see also
United States v. Brown, 791 F.2d 577, 578 (7th Cir. 1986). Noth-
ing about Jones’s behavior at trial rose to that level. In fact, the
Sixth Amendment protected his right to “stand[ ] mute and
forc[e] the state to its proofs,” as he elected to do. United States
10 No. 22-2312

v. Clark, 943 F.2d 775, 782 (7th Cir. 1991) (quoting United States
v. McDowell, 814 F.2d 245, 250 (6th Cir. 1987)). “More im-
portantly, even if [Jones’s] actions did warrant recission—and
they did not—the district judge was not obligated to rescind.”
Banks, 828 F.3d at 617.
 For these reasons, we AFFIRM.