In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-1303

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HENRY UNDERWOOD,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 20-CR-33 — **Holly A. Brady**, *Chief Judge.*

ARGUED DECEMBER 1, 2023 — DECIDED DECEMBER 18, 2023

Before WOOD, ST. EVE, and LEE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Henry Underwood chose to represent himself at trial on a felon in possession of a firearm charge. After taking the stand to testify in his own defense, he attempted to invoke his Fifth Amendment right to silence when the prosecutor questioned him on cross-examination. For his continued refusal to answer the prosecutor's question, the judge held him in criminal contempt. Separately, the jury found him guilty of the charged offense. He now asks us to

find that his pretrial waiver of counsel was not knowing and voluntary, and that the criminal contempt finding was improper. We reject both arguments.

## I. Background

In December 2019, Underwood was involved in an altercation culminating in shots fired outside of a Fort Wayne, Indiana home. Later, police detained Underwood after he exited a vehicle they suspected had been on the scene of the shooting. Under his seat, they discovered a loaded semi-automatic pistol with an extended magazine; they also recovered additional ammunition from the pocket behind the driver's seat. Underwood was arrested and, because of a previous felony conviction, later indicted in 2020 on a felon in possession of a firearm charge in violation of 18 U.S.C. § 922(g)(1).

In February 2022, several months before trial, Underwood's court-appointed attorney moved to withdraw, citing differences of opinion over defenses, motions, and filings and explaining that Underwood had requested to proceed pro se. At a hearing conducted by the assigned magistrate judge a few days later, the judge first permitted counsel to withdraw. Then, after a reminder from the prosecutor, the judge informed Underwood of the difficulties of proceeding pro se, inquired into his training and experience, and asked again if he would like new appointed counsel or standby counsel. Underwood reaffirmed his desire to represent himself but requested the assistance of standby counsel. The judge thus granted Underwood's request.

Representing himself, Underwood actively participated in pretrial proceedings, filing and responding to motions and issuing subpoenas. At trial, he cross-examined witnesses and

called several others on his own behalf while regularly conferring with standby counsel.

Witnesses gave conflicting testimony at trial about whether Underwood had a gun at the December 2019 altercation. Some reported seeing Underwood with a gun, which he later handed to someone else. Others asserted that Underwood never had a gun. Taking the stand in his own defense, Underwood testified that he never possessed a gun on the day of the shooting, nor did he own the firearm police found in the car. It was someone else, he claimed, who had the gun.

Naturally, the prosecutor asked Underwood the name of that person on cross-examination. But Underwood refused to answer, pleading the Fifth and stating that he did not want to be a "snitch." The judge intervened, first calling a sidebar and then declaring a recess. She questioned Underwood about his refusal to testify, informed him that the Fifth Amendment could not protect him from incriminating someone else, and warned him of the consequences if he did not answer the question, including the criminal contempt consequences. Despite the judge's repeated warnings, Underwood refused to answer, although he admitted his response would not incriminate himself.

At the trial's conclusion, the jury found Underwood guilty. A few months later, the district court judge issued a summary contempt order under Fed. R. Crim. P. 42(b). She later sentenced Underwood to 96 months for his violation of § 922(g)(1) and an additional 6-month consecutive sentence for criminal contempt.

## II. Analysis

On appeal, Underwood requests a new trial on the basis that his pretrial waiver of the Sixth Amendment right to counsel was not knowing and voluntary. He also appeals his criminal contempt conviction.

### A. Waiver of Right to Counsel

We review a district court's legal determination that a defendant waived his right to counsel de novo and its underlying factual findings for clear error. *United States v. Johnson*, 980 F.3d 570, 576 (7th Cir. 2020) (citing *United States v. Balsiger*, 910 F.3d 942, 951–52 (7th Cir. 2018)).

The Sixth Amendment ensures a criminal defendant's right to representation by an attorney. *Faretta v. California*, 422 U.S. 806, 807 (1975). But a defendant can waive that right and choose to represent himself when that choice is made knowingly, intelligently, and voluntarily. *Id.* at 835; *see also Iowa v. Tovar*, 541 U.S. 77, 88 (2004). Because legal representation is so crucial in the criminal process, we "indulge every reasonable presumption against the waiver." *United States v. Jones*, 65 F.4th 926, 929 (7th Cir. 2023) (quoting *United States v. Belanger*, 936 F.2d 916, 919 (7th Cir. 1991)). Despite that presumption, however, "[w]hen such a [knowing and voluntary] waiver is timely made by a competent defendant, a trial court may not deny it." *United States v. Banks*, 828 F.3d 609, 614 (7th Cir. 2016).

Importantly, the right to proceed pro se is not contingent upon the defendant's abilities or likelihood of success, but on whether he waived the right knowingly and voluntarily. "Both savvy and foolish defendants have a constitutional right to self-representation." *Johnson*, 980 F.3d at 578. It is the

defendant's awareness of the challenge of proceeding pro se, not his capability in overcoming it, that we must assess when evaluating whether the district court properly permitted the defendant to exercise that right.

We consider four factors when evaluating whether a defendant knowingly and voluntarily waived the right to counsel, considering the record as a whole. *Id.* at 577 (citing *United States v. Eads*, 729 F.3d 769, 775 (7th Cir. 2013)). "We look first to the extent of the district court's formal inquiry into the defendant's waiver of counsel, if any; next to other evidence in the record showing the defendant understood the dangers and disadvantages of self-representation; then to the defendant's background and experience; and finally to the context of the choice to proceed pro se." *Jones*, 65 F.4th at 929.

Underwood argues that the magistrate judge's formal inquiry was deficient and that the other factors do not overcome that deficiency. We disagree.

### 1. Formal Inquiry

We have emphasized the importance of "a thorough and formal inquiry," referred to as a *Faretta* colloquy, "in which the court asks the necessary questions and imparts the necessary information." *United States v. Clark*, 774 F.3d 1108, 1112 (7th Cir. 2014). This inquiry requires judges to walk a "razor's edge." *See United States v. Oreye*, 263 F.3d 669, 672 (7th Cir. 2001) ("If the judge exaggerates either the advantages of being represented or the disadvantages of self-representation, he will be accused of having put his thumb on the scale."). On the one hand, "[i]f a *Faretta* colloquy is too cursory, it may be insufficient to guard against an unknowing waiver of the right to counsel." *United States v. Stapleton*, 56 F.4th 532, 539 (7th

Cir. 2022). On the other hand, "if the colloquy is too exacting, it risks depriving the defendant of his right to represent himself" by relentless questioning that ultimately causes the defendant to give up the right he sought to exercise. *Id.*

Here, the magistrate judge's inquiry, though not as thorough as it might have been, adequately informed Underwood of the dangers of self-representation. It would have been preferable for the magistrate judge to have reiterated the penalties Underwood faced to underscore the gravity of his decision. Nevertheless, the magistrate judge did warn Underwood that proceeding pro se "is nearly always unwise," that he "may conduct a defense to [his] disadvantage," that the government had professional attorneys, and that he too could have a knowledgeable and professional attorney. He also admonished Underwood that he would not be treated more leniently or held to a different standard with respect to rules of law and procedure simply because he was representing himself, and he would be expected to know and comply with those rules.

The judge also asked Underwood if he was aware that he would have the opportunity to present defenses and mitigating circumstances, to which Underwood replied in the affirmative. On appeal, he contends that the judge should have listed specific defenses for him, citing the Supreme Court's decision in *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948) (Black, J., plurality opinion). In that case, the Court noted that at the guilty plea stage, a defendant's waiver of the right to counsel "must be made with an apprehension of … possible defenses to the charges and circumstances in mitigation thereof." *Id.* This statement does not require judges to list the specific defenses a pro se defendant should consider. In fact, the *Von Moltke* Court itself noted that the inquiry will depend upon

"the circumstances of the case." *Id.* at 723. Aware that different circumstances may require variations in inquiry, we will not adopt a formulaic script here. Indeed, it would be unwise to require district court judges to step in as defense attorneys, especially when they are only generally aware of the facts of a given case and potential defenses that may be available. The magistrate judge did not fall short by simply informing Underwood that he would be able to present defenses on his own behalf.

Although not mandated for a *Faretta* colloquy, we remind judges that the *Benchbook* for United States district court judges provides the relevant questions and topics about which criminal defendants seeking to represent themselves should be informed. To be sure, "we do not read any of this court's decisions to hold that the litany is prescribed in every case or that advice about any particular disadvantage of self-representation is essential; such a reading would put us at odds with the Supreme Court." *United States v. Hill*, 252 F.3d 919, 928 (7th Cir. 2001). Yet "asking the *Benchbook* questions may ensure that the defendant has his eyes open." *Id.* We encourage presiding judges to rely on this list of questions as a guide.

### 2. Other Factors

Besides the formal inquiry, the other three factors reinforce our conclusion that Underwood knowingly and voluntarily waived his right to counsel.

*Evidence of Understanding.* First, Underwood's active participation at trial and regular consultation with standby counsel indicate that he knew the choice he was making when he elected to proceed pro se. Reliance on standby counsel

"reflect[s] 'an appreciation for the difficulties of self-representation.'" *Balsiger*, 910 F.3d at 954 (quoting *United States v. Todd*, 424 F.3d 525, 533 (7th Cir. 2005)). Active participation at trial by making motions, offering evidence, conducting cross-examinations, and impeaching witnesses is further evidence that a defendant's waiver was made knowingly and intelligently. *Todd*, 424 F.3d at 533. Underwood's activity at trial indicates an appreciation for the task he took on when he elected to represent himself.

*Background and Experiences.* Second, Underwood's background demonstrates that he comprehended the challenges he faced by proceeding pro se. We examine a defendant's background "not in hopes of finding adequate legal training, but merely to gauge whether he appreciated the gravity of his waiver." *United States v. Volpentesta*, 727 F.3d 666, 677 (7th Cir. 2013). Underwood's experience with the legal system, including two prior felony convictions and one murder acquittal by a jury, indicates he possessed knowledge of the complexities of procedure and trial sufficient to make him aware of the task he was undertaking.

*Reason for Waiver.* Finally, Underwood chose to proceed pro se after a disagreement with his appointed counsel over his defense and trial strategy. "A defendant who waives his right to counsel for strategic reasons," including the decision to proceed without counsel due to differences in opinion regarding defense strategy, "tends to do so knowingly." *United States v. Harrington*, 814 F.3d 896, 900 (7th Cir. 2016). We therefore presume Underwood's choice in this instance to have been strategic and intentional.

*       *       *

Considering all factors here, including the formal inquiry, Underwood's performance at trial, his background experience, and the reason for his decision to represent himself, we find ample evidence that Underwood knowingly and voluntarily waived his Sixth Amendment right to counsel.

## B. Criminal Contempt

Underwood also challenges the district court's summary disposition of criminal contempt. We "give careful and meticulous consideration to the trial court's decision that summary disposition is appropriate." *F.T.C. v. Trudeau*, 606 F.3d 382, 386 (7th Cir. 2010) (quoting *United States v. Moschiano*, 695 F.2d 236, 252 (7th Cir. 1982)). But once "the literal requirements of the summary disposition rule are met, we review the district judge's decision to impose it for an abuse of discretion." *Id.*

Federal Rule of Criminal Procedure 42(b) permits summary disposition or punishment of criminal contempt if the contemptuous conduct happened in the judge's presence and if "a compelling reason for an immediate remedy" exists "or time is of the essence." *United States v. Britton*, 731 F.3d 745, 749 (7th Cir. 2013) (cleaned up). A witness's improper refusal to testify is one such compelling reason. *United States v. Wilson*, 421 U.S. 309, 316 (1975).

Because Underwood improperly refused to testify on cross-examination in the judge's presence, the literal requirements of Rule 42(b) are met. He already had waived his Fifth Amendment right against self-incrimination by choosing to testify. Once he took that step, he could not validly refuse to answer questions relevant to his testimony, including the prosecutor's question about the name of the person he

claimed had the gun that day in December 2019. *See Kansas v. Cheever*, 571 U.S. 87, 94 (2013). A witness may not self-select which questions he will answer and which ones he will not. *See Mitchell v. United States*, 526 U.S. 314, 322 (1999). The question was relevant because Underwood had denied possession of the gun in question and asserted that an unidentified person on the scene had it instead. His own testimony regarding the events and culpability of some other person opened the door to the prosecutor's question.

Even if Underwood could have invoked his Fifth Amendment right against self-incrimination here, he repeatedly admitted the answer he refused to give would not incriminate himself. The answer, he explained, might incriminate someone else instead, and he refused to be a "snitch." But the Fifth Amendment does not protect against incriminating others; when properly invoked, it only shields the witness from being forced to testify to relevant information that might be self-incriminating. *United States v. Kuehn*, 562 F.2d 427, 430 (7th Cir. 1977) ("The privilege against self-incrimination is personal; it may not be asserted to protect another."); *see also United States v. Bennett*, 874 F.3d 236, 246 (5th Cir. 2017) ("Fifth and Sixth Amendment rights, like Fourth Amendment rights, are personal in nature and cannot be asserted vicariously." (quoting *United States v. Fortna*, 796 F.2d 724, 732 (5th Cir. 1986))). *Cf. United States v. Ins. Consultants of Knox, Inc.*, 187 F.3d 755, 759–60 (7th Cir. 1999) (holding that because the privilege against self-incrimination is personal, it cannot be asserted on behalf of a collective entity). Accordingly, failing to answer the prosecutor's question was contemptuous conduct, and a summary disposition was appropriate.

Because the requirements of summary criminal contempt are met, we review the judge's decision to find Underwood in contempt for abuse of discretion.

The district court judge warned Underwood multiple times of the consequences he might face if he continued to refuse to answer the question, including the possibility of criminal contempt, fines, and a sentence of up to six months. In the context of summary contempt, due process requires no more. *See Pounders v. Watson*, 521 U.S. 982, 988 (1997). Given Underwood's pro se status, the court could have encouraged him to consult with standby counsel before holding him in contempt. But here, Underwood had regularly consulted with standby counsel throughout the trial, usually without any prompting from the judge. There is no reason to believe he could not have done so here as well. Consequently, the judge did not abuse her discretion by finding him in contempt.

### III. Conclusion

Underwood knowingly and voluntarily waived his right to counsel, and the district court did not abuse its discretion by summarily finding him in contempt for refusing to answer the prosecutor's question once he took the stand in his own defense.

\*          \*          \*

The judgment of the district court is

AFFIRMED.