In the

# United States Court of Appeals

### For the Seventh Circuit

No. 22-3278

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EUNICE D. SALLEY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cr-797 — **Robert M. Dow, Jr.**, *Judge.*

ARGUED MAY 15, 2024 — DECIDED FEBRUARY 10, 2026

Before BRENNAN, *Chief Judge*, and KIRSCH and LEE, *Circuit Judges*.

LEE, *Circuit Judge*. From the start of her criminal proceedings, Eunice Salley[1] insisted that she did not want to be

---

[1] Although Eunice Salley legally changed her name to Oya Awanata, we will refer to her as Eunice Salley because that is the name that she used

represented by counsel despite facing serious charges. On appeal, she asserts that the district court erred in allowing her to represent herself and requests a new trial. Because the record shows that her waiver of counsel was knowing and voluntary, we disagree and affirm.

**I**

Salley's grandmother, Estella Salley, began receiving monthly pension payments from her former employer upon her retirement in 1978. The payments were mailed to her residence where Salley also resided. Estella passed away in April 2009, and because she had not designated a beneficiary, her pension payments should have ceased. But, in response to inquiries by Estella's former employer regarding her condition, Salley executed several affidavits falsely stating that Estella was still alive so that Salley could continue receiving the pension payments.

Investigations also revealed that Salley, who operated a tax preparation business, had prepared and filed false income tax returns on behalf of numerous clients claiming fictitious refunds of which she took a sizeable cut. Additionally, Salley failed to report five stolen pension payments as income on her own tax filings.

A grand jury charged Salley with one count of mail fraud under 18 U.S.C. § 1341, five counts of theft from an employee benefit plan under 18 U.S.C. § 664, twenty-two counts of filing false tax returns under 26 U.S.C. § 7206(2), and one count of

---

when she committed her offenses. *See United States v. Salley*, No. 19-cr-797, 2021 WL 1676397, at *4 (N.D. Ill. Apr. 28, 2021).

failing to report the pension payments she received as income under 26 U.S.C. § 7206(1).

From the outset, Salley chose to forego counsel and opted to represent herself (as a precautionary measure, the court appointed Joshua Herman as stand-by counsel). For her defense, Salley relied primarily on theories commonly associated with the sovereign citizen movement.[2] For instance, she argued that the district court lacked jurisdiction over her criminal case and over her personally because she "is neither a statutory person, nor a commercial person, nor an enemy person," and because she is a "Private Citizen of the United States / Private American National / Non-U.S. citizen relying on the protection of the temporarily-imposed military governments, federal and state."

The court rightly rejected such arguments as frivolous, and in a dozen separate hearings, the district court advised Salley of her constitutional right to counsel as well as her right to represent herself. When Salley would reiterate her desire to go it alone, the court practically begged her to reconsider and explained the many ways that an attorney could be helpful to her. Nevertheless, Salley rebuffed these entreaties and chose to proceed on her own.

The case proceeded to trial. And, although she had the benefit of stand-by counsel, Salley refused to make an opening or closing argument. Nor did she exercise her right to cross-examine the government's witnesses or present

---

[2] A general overview of the sovereign citizen movement can be found at *Sovereign Citizens Movement*, S. Poverty L. Ctr., https://bit.ly/3rl5V6m (last visited, Feb. 7, 2026).

witnesses of her own. Not surprisingly, the jury convicted her of all counts. Salley now appeals, arguing that the district court should have prohibited her from representing herself and appointed counsel for her.

## II

We review a district court's determination that a defendant has waived the right to counsel *de novo*. *United States v. Underwood*, 88 F.4th 705, 708 (7th Cir. 2023). But the court's underlying factual findings are reviewed for clear error. *Id.*

The Sixth Amendment guarantees a criminal defendant the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "Because of the importance of the right to counsel in our constitutional scheme, we do not lightly conclude that a defendant has waived his right to counsel." *United States v. Sandles*, 23 F.3d 1121, 1125–26 (7th Cir. 1994) (citation omitted).

On the other hand, the Supreme Court has warned that the government may not compel a criminal defendant to exercise her constitutional right to counsel and accept legal representation. *See Faretta v. California*, 422 U.S. 806, 807 (1975). Indeed, so long as a defendant waives the right to counsel in a knowing and intelligent manner, she may decline that right and instead invoke her constitutional right to proceed *pro se*. *Id.* at 835. What is more, "[w]hen such a waiver is timely made by a competent defendant, a trial court may not deny it." *United States v. Banks*, 828 F.3d 609, 614 (7th Cir. 2016) (citation omitted).

To determine whether a defendant's decision to waive her right to counsel was knowingly and intelligently made, we proceed on a case-by-case basis, considering "the particular

facts and circumstances surrounding th[e] case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). We examine four factors to guide this inquiry. *United States v. Todd*, 424 F.3d 525, 530 (7th Cir. 2005).

First, we ask "whether and to what extent the district court conducted a formal hearing." *Id.* (quoting *United States v. Avery*, 208 F.3d 597, 601 (7th Cir. 2000)). Second, we look to "other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation." *Id.* Third, we take into account "the background and experience of the defendant." *Id.* Lastly, we consider "the context of the defendant's decision to waive his right to counsel." *Id.* It must be said, however, that "[r]egardless of the consideration of these individual factors, our inquiry at all times is directed to the record as a whole and we ask whether that record supports a knowing and intelligent waiver." *United States v. Egwaoje*, 335 F.3d 579, 585 (7th Cir. 2003) (citation omitted).

This last point is worth emphasis—"the question is not whether the district judge used a check-off list but whether the defendant understood his options. All a judge can do as a practical matter—all a judge need do as a legal matter—is ensure that the defendant knows his rights and avoids hasty decisions." *United States v. Hill*, 252 F.3d 919, 928 (7th Cir. 2001). Thus, a reviewing court's "attention ultimately is directed not at what was said or not said to the defendant but whether that defendant in fact understood the risks and made a knowing and intelligent waiver." *Egwaoje*, 335 F.3d at 585 (citation omitted).

In cases like this, the district court's task is not a simple one. Given the defendant's constitutional right to counsel, on the one hand, and the right to decline counsel and proceed *pro se*, on the other, a district court "is on the razor's edge in assisting a defendant to make an informed choice." *United States v. Oreye*, 263 F.3d 669, 672 (7th Cir. 2001). "If a *Faretta* colloquy is too cursory, it may be insufficient to guard against an unknowing waiver of the right to counsel; if the colloquy is too exacting, it risks depriving the defendant of his right to represent himself." *United States v. Stapleton*, 56 F.4th 532, 539 (7th Cir. 2022) (citation omitted). For these reasons, we look at the totality of the record and eschew a "formalistic, mechanical approach." *Egwaoje*, 335 F.3d at 585.

## A. Formal Hearing

Salley first points out that the district court failed to conduct a formal *Faretta* hearing. But given our focus on the record as a whole, "[f]ormal hearings are not always necessary" so long as the totality of the circumstances "show[] clearly that the defendant knowingly and intelligently waived the right and understood the risks of going it alone." *United States v. Vizcarra-Millan*, 15 F.4th 473, 486 n.1 (7th Cir. 2021); *see, e.g., United States v. Cooper*, 591 F.3d 582, 587 (7th Cir. 2010); *United States v. Johnson*, 534 F.3d 690, 694 (7th Cir. 2008). This is especially true where the topics of discussion typically covered during a formal *Faretta* hearing are discussed elsewhere in the criminal proceedings. *Cooper*, 591 F.3d at 587.

That is precisely what happened here. At practically every hearing (and often multiple times during a hearing), the district court told Salley that she had the right to represent herself but urged her to reconsider. In fact, the court repeatedly advised Salley that she would be better served by a trained,

experienced lawyer to review discovery, navigate the criminal justice system, explore a potential plea deal, and try the case, if necessary. Furthermore, the district court warned Salley that, if she decided to proceed *pro se*, she would be expected to follow the Federal Rules of Criminal Procedure and the Federal Rules of Evidence if her case proceeded to trial. Given the sheer number of times that the district court reminded Salley of her right to counsel and the difficulties of proceeding *pro se*, coupled with her consistent, unwavering refusal to exercise that right, we can only conclude that she understood the nature of her constitutional right to counsel and the pitfalls of self-representation. *See United States v. England*, 507 F.3d 581, 588 (7th Cir. 2007) ("A waiver is likely knowing and voluntary if the defendant gave it … after repeatedly rejecting the assistance of counsel.") (citation omitted).

## B. Other Evidence of Salley's Understanding

The record contains additional evidence that Salley understood her rights and the consequences of her decision to represent herself. For example, while proceeding *pro se*, Salley actively pursued her defense by filing at least nine lengthy motions that cited the Federal Rules of Criminal Procedure, the United States Code, the United States Constitution, and case law. Additionally, at one point in the proceedings, Salley filed a financial affidavit to support a motion for attorney representation so that Herman could seek to reopen her bond proceedings. This underscores the notion that Salley was well aware of her limitations as a *pro se* defendant and the option to employ court-appointed counsel. *See United States v. Balsiger*, 910 F.3d 942, 953–54 (7th Cir. 2018).

Furthermore, Salley knew that she could request counsel at any point in the proceedings. For example, at a hearing on the motion to reopen bond proceedings, Salley asked to be released from custody so that she could retain private counsel. The district court denied the motion but explained that detainees are able to retain private counsel while in custody. Yet Salley never pursued this opportunity.

Salley eventually asked the court to strike Herman as stand-by counsel because she did not want him as her attorney. This, Salley asserts, should have indicated to the court that she no longer wanted to represent herself. But, when a defendant refuses to retain counsel and rejects the only counsel to which she is constitutionally entitled with the understanding that her sole remaining alternative is self-representation, this constitutes a knowing and intelligent waiver. *Oreye*, 263 F.3d at 670 ("If you're given several options, and turn down all but one, you've selected the one you didn't turn down.").[3]

## C. Salley's Background and Experience

Next, we examine Salley's background and experience, "not in hopes of finding adequate legal training, but merely to gauge whether [s]he appreciated the gravity of h[er] waiver." *United States v. Volpentesta*, 727 F.3d 666, 677 (7th Cir. 2013) (citation omitted).

---

[3] Denying the motion, the district court wisely permitted Herman to continue as stand-by counsel due to Salley's recalcitrant conduct. By way of example, at times, Salley refused to appear at her status hearings, hung up on the judge during telephonic hearings, refused to don the headphones required for her to hear the proceedings, and declined to speak even when she was present at multiple hearings.

First, there is no indication that Salley had any mental health issues other than anxiety, which was treated by medication. Additionally, Salley is thirty-seven years old and reports having a post-graduate degree. Moreover, her *pro se* court filings indicated at least some familiarity with the Federal Rules of Criminal Procedure, the United States Code, the United States Constitution, and court decisions. Furthermore, Salley has experience with criminal proceedings, having pleaded guilty in state court to operating an uninsured motor vehicle. She also was previously charged with attempted murder, aggravated discharge of a firearm, aggravated domestic battery, and aggravated battery with a deadly weapon stemming from a single incident with her sister. And she indicated that she had spent years litigating proceedings concerning identity theft and fraud that ended in her favor. Salley then was no stranger to the courtroom or court proceedings.

Turning to the record in this case, the district court reviewed each charge with Salley as well as the statutory maximum term of incarceration, fine, terms of supervised release, and special assessments for each count. Moreover, when she filed motions to dismiss, the district court denied them after explaining the reasons and later declined to reconsider the rulings. *Salley*, 2021 WL 1676397, at *1 (motions to dismiss); *see United States v. Salley*, No. 19-cr-797-1, 2021 WL 2915119, at *1 (N.D. Ill. July 12, 2021) (motions to reconsider). And, as the case proceeded to trial, the district court informed Salley of the trial date in open court, and she personally attended the pretrial conference and was present during her trial. Again, all the while, the district court implored her to accept legal counsel and reconsider her decision to proceed *pro se.* On this record, there can be no doubt that Salley understood the

nature of the proceedings and the ramifications of her decision to forego counsel.

**D. Context of Salley's Waiver**

Turning to the context of her waiver, we have held that "[a] defendant who waives his right to counsel for strategic reasons tends to do so knowingly." *United States v. Harrington*, 814 F.3d 896, 900 (7th Cir. 2016) (citations omitted). Moreover, "when an indigent defendant rejects competent, conflict-free counsel, he may waive his right to counsel by his uncooperative conduct, so long as his decision is made with knowledge of his options and the consequences of his choice." *United States v. Garey*, 540 F.3d 1253, 1266 (11th Cir. 2008).

From the outset, like others who espouse sovereign citizen beliefs, Salley claimed that she is not a citizen of the United States but, rather, a private citizen who is a beneficiary of a trust that is outside of the federal district. As a result, in her view, the district court lacked subject matter and *in personam* jurisdiction over her rights, property, and liberty. She repeatedly challenged the district court's jurisdiction on this basis verbally and in writing.

Now, Salley contends that, because she eventually acknowledged the district court's jurisdiction over her, her choice to represent herself was not strategic. But even after the district court ruled that it had jurisdiction, she continued to press her sovereign citizen arguments by, for example, claiming presidential executive privilege based on a purported declaration listed in the Recorder of Deeds that she is subrogated to President Donald J. Trump and Steven Mnuchin, then-Secretary of the Treasury. No counsel, whether appointed or retained, could have presented such baseless theories to the

court. Salley was able to make them only by proceeding *pro se*, illustrating that her decision to waive counsel was a strategic one.

Finally, Salley points out that she did not engage in obstructionist behavior at trial but merely refused to participate. In her view, this required the district court to rescind her waiver of counsel. But this is incorrect. Again, Salley could have requested counsel at any time, but her statements and actions throughout the proceedings indicated to the district court that she intended to stand firm on her decision to represent herself, which is her right. The fact that she did not represent herself well or that her theories had no legal validity does not necessitate a different result. *See United States v. Berry*, 565 F.3d 385, 391 (7th Cir. 2009) ("[T]he right to self-representation cannot be denied merely because a defendant lacks legal knowledge or otherwise makes for a poor advocate.") (citing *Faretta*, 422 U.S. at 834); *Banks*, 828 F.3d at 616 ("The fact that that [the sovereign-citizen] strategy was unwise, without more, is irrelevant[.]"); *see also United States v. Jones*, 65 F.4th 926, 931 (7th Cir. 2023) ("We have only allowed district courts to rescind a defendant's waiver of counsel when he obstructs the proceedings, making it practically impossible to proceed.") (internal quotation marks omitted).

\*       \*       \*

The judgment is AFFIRMED.