2023 IL App (1st) 190265-U

SECOND DIVISION
September 12, 2023

No. 1-19-0265

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | 18300139901 |
| | ) | |
| ANDREW SLABON, | ) | Honorable |
| | ) | Joel L. Greenblatt, |
| Defendant-Appellant. | ) | Judge Presiding |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Trial court properly concluded that defendant unequivocally requested self-representation and knowingly and voluntarily waived right to counsel.

¶ 2    Defendant, Andrew Slabon, appeals from his convictions for retail theft and obstructing identification. He does not challenge his convictions or sentence. Rather, he argues that the trial court erred in allowing him to represent himself at trial. We disagree and affirm.

¶ 3                                        BACKGROUND

¶ 4    The State charged defendant with two class A misdemeanors, retail theft of less than $300 and obstructing identification, for an incident occurring on May 4, 2018. The cases were later consolidated into one proceeding.

¶ 5    At his first court date, on June 4, 2018, defendant appeared in court but refused to identify himself as Andrew Slabon. Instead, defendant insisted he did not use a last name and only went by "Andrew." When warned by the court that if Andrew Slabon did not appear, the court would issue a warrant for Slabon's arrest, defendant said, "I'm the administrator for that account" and claimed he was "not here as a person or agent." He reiterated that general sentiment multiple times in the hearing. For example: "I'm standing before the Court responding to the name of Andrew Slabon as administrator for that account." And: "I'm responding as administrator on special visitation. I'm not here as a person."

¶ 6    After more discussion along these lines, defendant later said, "I'll be happy to entertain this court with a jury trial" and requested discovery from the State. Defendant refused to admit he was Andrew Slabon.

¶ 7    Defendant repeatedly tried to hand a document to the court, which he later explained was a birth certificate. "This is what you want," defendant told the court, referring to the document. "This is Andrew Slabon right here." He later repeated, referring to the document, "[H]ere's Mr. Slabon right here."

¶ 8    To the extent that defendant gave any reasons for his refusal to acknowledge his identity, it was this:

> "Well, acknowledging who I am to the State, which happens to be probably the most
>
> corrupt state in the United States with two consecutive governors sent to prison, so you're
>
> asking me to step up and say I'm a citizen of this state. I don't vote, I don't have a
>
> driver's license, and I don't have an ID. So you wouldn't be able to provide me with a
>
> fair trial of a jury of my peers because they're all voters, they're all registered to vote,
>
> drive, have IDs; so, therefore, I wouldn't be granted—if I were to participate in this

milking of the Federal Reserve, you wouldn't guarantee me a fair trial."

¶ 9      Later that same day, before a different judge, defendant continued to refuse to identify himself. The court noted that defendant had no lawyer, and defendant responded that "I'll be rejecting any Public Defender offer as administrator for Andrew Slabon." The court asked if defendant wanted to represent himself, to which he replied, "I'm not representing myself. I can't be myself."

¶ 10     The State then verified that the person standing before the court was Andrew Slabon, based on records from the Cook County Sheriff's Office. The court again turned to defendant and asked if he wanted to represent himself, and defendant responded that he "couldn't represent himself." When asked to clarify, defendant said, "I'm not Andrew Slabon, so I would act as attorney for Andrew Slabon. I'm not representing myself, so I would like to clarify that. I am not Andrew Slabon, in all capital letters, as defined by your records." The trial court expressed doubts about defendant's competency and ordered a fitness examination.

¶ 11     A month later, at defendant's next court date, the court asked him if he had an attorney. Defendant again responded, "I am not going to have any representation by the Public Defender," and "I am not going to represent myself because I am not here as a person or agent for Mr. Slabon." He refused to identify as Andrew Slabon and would only respond to "Andrew," saying his last name was irrelevant. After the State again confirmed his identity with his Cook County Jail identification card, defendant requested discovery. The judge warned defendant that he should consider having an attorney help him on his case, and that if he represented himself, he would be held to the same standards as any attorney.

¶ 12     When defendant appeared in court again, on August 8, 2018, defendant again refused to respond to the name Andrew Slabon. The court noted that defendant had also refused to

cooperate with the forensic psychiatrist assigned to evaluate him.

¶ 13    The next month, defendant appeared in court once more, again only responding to "Andrew." The trial court attempted to verify his identity, and when it tried to verify his date of birth, defendant responded "I am not here as a person. Administrator, I am in the capacity as administrator." The court observed that a picture on a copy of defendant's identification resembled the defendant.

¶ 14    The court then informed defendant of the charges against him and asked him if he had an attorney. Defendant responded, "I couldn't answer that question, I have no desire to allow the [c]ourt to appoint a Public Defender to represent Mr. Slabon." The court then advised defendant about the possible sentences he faced. When asked how he wanted to plead, defendant refused to answer. The court interpreted his response as a plea of not guilty, then readdressed the question of counsel.

¶ 15    Defendant again said he did not want a public defender appointed to him. When the court told him it interpreted his responses as a desire to represent himself, defendant again said, "I am not representing myself. I couldn't do that. I am not in the capacity as a person." The court then proceeded to admonish the defendant that he had a right to represent himself, but that the court needed to ask him some questions first. The court then provided defendant with admonishments pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), informing defendant of the offenses with which he was charged, explaining the maximum and minimum sentences and the fact that he might have to serve them consecutively, and advising defendant that he had the right to a court-appointed public defender. After each admonishment, the court asked defendant if he understood; defendant either refused to answer or said he would not answer the question. The court then said it would appoint the public defender, and defendant chimed in, again refusing to

have the public defender appointed to represent him.

¶ 16    Later that day and in a different courtroom, the trial court again asked defendant if he wanted to have a public defender appointed to his case. Defendant held firm, saying the public defender "wouldn't be representing me, he'd be representing Mr. Slabon, there'd be no agreement or I would be rejecting the [c]ourt's offer of representation." Defendant then asked the court about the jury venire in his case, but no trial was held that day.

¶ 17    In September 2018, the court addressed the previous concern about the defendant's fitness. It noted that defendant had been evaluated by forensic psychiatrists in previous cases. They concluded that the defendant did not exhibit any evidence of major mental illness, he could understand the nature of the charges against him, the courtroom procedure, and the role of the lawyers and judges involved in his case. "Any observation to the contrary should be interpreted as volitional on part of the defendant," the report read. The court concluded it no longer had a bona fide doubt of defendant's fitness.

¶ 18    Defendant then requested a bond hearing to review his conditions of release. He fully participated in the hearing, answering the court's questions and objecting to the State's discussion of his criminal background. The court released defendant on personal recognizance bonds.

¶ 19    The case began moving toward trial. Defendant requested and received discovery from the State, demanded trial in writing, and objected when the State requested continuances.

¶ 20    Eventually, the case proceeded to a jury trial. Immediately before the trial, the court asked him once again if he wanted to continue representing himself. Defendant responded that "For the record, I am not representing myself, I'd be representing the administrative entity as Andrew Slabon." The court again attempted to clarify, asking defendant, "Okay, so you don't

No. 1-19-0265

want an attorney; is that correct?" Defendant said, "Correct."

¶ 21    During the trial, defendant cross-examined the State's witnesses and made arguments to the jury. The jury returned verdicts of guilty on both retail theft and obstructing identification. The court later sentenced him to one year of probation and 109 days in jail, with credit for time already served.

¶ 22                                      ANALYSIS

¶ 23    On appeal, defendant does not challenge his conviction or sentence. Nor does he claim that he was unfit to stand trial. Rather, he alleges only that the trial court erred when it allowed him to represent himself.

¶ 24    Defendant concedes that he has forfeited this error by not properly preserving it for our review. He asks us to review it under the plain-error doctrine. See *People v. Herron*, 215 Ill. 2d 167 (2005); Ill. S.Ct. R. 615(a) (eff. July 1, 1984). Plain errors, or defects that affect substantial rights, may be reviewed under two circumstances: (1) when the evidence is closely balanced such that the error severely threatens to tip the scales of justice; or (2) when the alleged error is so substantial that it affected the fundamental fairness of the proceeding and challenges the integrity of the judicial process. *Herron*, 215 Ill. 2d at 186-87. Defendant carries the burden of persuasion under either prong. *People v. Lewis*, 234 Ill. 2d, 32, 43 (2009). And failing to ensure a defendant makes a knowing and intelligent waiver of counsel is a plain and serious error affecting a substantial right, calling into question the fundamental fairness of the proceedings. *People v. Moore*, 2021 IL App (1st) 172811, ¶ 12 (collecting cases).

¶ 25    But before determining whether plain error occurred, we must first determine whether any error at all occurred. *Lewis*, 234 Ill. 2d at 43. We start there.

¶ 26    A defendant has the constitutional right to counsel at every critical stage of the

proceedings against them. U.S. Const. amend VI, XIV; Ill. Const. 1970, Art. I, § 8. But a defendant also has the absolute right to represent himself. *People v. Baker*, 92 Ill. 2d 85, 90 (1982).

¶ 27    To invoke the right to self-representation, a defendant must knowingly and intelligently relinquish the right to counsel. *Id.* at 115-16. Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) requires that, before allowing defendants to represent themselves, a trial court must ensure that they understand (1) the nature of the charge; (2) the sentencing range, including any penalty to which the defendant may be subject due to prior convictions; and (3) the right to counsel and to have counsel appointed if they are indigent. Strict technical compliance with Rule 401(a) is not always required; rather, a court must substantially comply with the rule to effectuate a valid waiver, so long as the record indicates the waiver was made knowingly and voluntarily, and the admonishments did not prejudice the defendant's rights. *People v. Haynes*, 174 Ill. 2d 204, 236 (1996).

¶ 28    Following the admonishments, a defendant must make a knowing and intelligent waiver of them with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *People v. Kidd*, 178 Ill. 2d 92, 104-05 (1997). The waiver must be clear, unequivocal, and unambiguous. *People v. Burton*, 184 Ill. 2d 1, 21 (1998). The purpose behind requiring a clear and unequivocal waiver is to prevent the defendant from manipulating the system by going back and forth between a request for counsel and a wish to proceed *pro se*. See *People v. Mayo*, 198 Ill. 2d 530, 538 (2002).

¶ 29    On review, a trial court's decision to allow a defendant to represent himself will only be reversed if the court abuses its discretion, which occurs when the court's ruling is so arbitrary that no reasonable person would agree with the court's decision. *People v. Washington*, 2016 IL

App (1st) 131198, ¶ 50; *People v. Pike*, 2016 IL App (1st) 122626, ¶ 114.

¶ 30    Before we address the two specific arguments by counsel, we offer some general observations about the record here. The first is that the man standing before the various misdemeanor judges in the proceedings below was, in fact, Andrew Slabon. He admits as much on appeal. He admitted as much, albeit under "duress," in the trial court on December 4. And he at least indirectly admitted it in his initial hearing, when the trial court threatened to issue a bench warrant for the "absent" Andrew Slabon, when "Andrew" told the court he would be the subject of that bench warrant.

¶ 31    This elementary fact was obviously clear to each judge before whom defendant appeared. Yet defendant routinely denied it. He said he was "Andrew" but refused to recognize any surname. And he claimed that he was the "legal representative" or "administrator" of the "entity" or "account" known as Andrew Slabon. He, of the first name only, would represent "Andrew Slabon" in court, disavowing any right to a public defender. "Andrew Slabon," he told the court, was nothing more than a birth certificate he held in his hand.

¶ 32    We can think of only two possibilities for defendant's actions. One, obviously, is some form of mental illness or diminished capacity. The trial court seized on that possibility immediately and ordered a BCX for defendant. Though defendant largely refused to cooperate with that examination, the trial court ultimately determined that defendant was fit and competent to stand trial, based in part on the examination, in part on how defendant conducted himself in court, and in part based on his history (including self-representation and fitness examinations) in prior criminal cases.

¶ 33    Defendant does not challenge that determination on appeal. And we would have no basis to determine that defendant was not, in fact, fit for trial, particularly given his performance at

trial as a *pro se* defendant.

¶ 34     If we put aside any notion of severe mental illness or diminished capacity, we are left with the only other option—that defendant was playing games with the trial court. Perhaps defendant sincerely chooses to recognize himself only by a single name and wishes to disavow his last name. In his personal life, that is obviously his right. He could even legally seek a change of name. But in court, after his arrest for retail theft and obstructing identification, defendant's adamant refusal to admit that he was the named defendant cannot be chalked up to anything other than gamesmanship. Everyone in those misdemeanor courtrooms, defendant included, knew that the person standing before the judge was the defendant, Andrew Slabon.

¶ 35     Defendant's refusal to admit the obvious colored everything that happened in the proceedings. The circuit judges could not get a straight answer out of defendant. He denied he was Andrew Slabon but, in the same breath, rejected the appointment of a public defender (which only Andrew Slabon could do). He then denied that the rejection of the public defender meant he was representing himself because he—the person rejecting the appointment—was not Andrew Slabon but "Andrew" only.

¶ 36     Our review of the record reveals that the various judges before whom defendant appeared exercised remarkable restraint and bent over backwards to deal with an exceedingly difficult situation, straining to get answers out of defendant to ensure the protection of his constitutional rights. At times, their vain attempts at admonishing defendant sounded less like a courtroom appearance and more like a replay of the old Abbott and Costello routine, "Who's on First?"

¶ 37     With these observations in mind, we turn to defendant's first argument, that defendant never unequivocally and unambiguously requested the right to represent himself, as the law requires. See *Burton*, 184 Ill. 2d at 21.

¶ 38    Our most restrained and polite response is that defendant's argument is too cute by half; it divorces what happened from the overall context, which we are required to consider. See *Washington*, 2016 IL App (1st) 131198, ¶ 55. Again, it is undisputed that the individual standing before the various judges in misdemeanor court was, in fact, Andrew Slabon, even though he only answered to "Andrew." And it is abundantly clear from the record that every one of the judges recognized as much. So when "Andrew" stated, over and over again, without any hesitation or equivocation, that he would be representing "Andrew Slabon," his assertions were the functional equivalent of Andrew Slabon stating that he would represent himself.

¶ 39    Though we could stop there, we would add that, given defendant's stated indigency, his only other option besides self-representation was the appointment of a public defender, which defendant consistently and vehemently rejected, further indicating his desire for self-representation. See *People v. Lesley*, 2018 IL 122100, ¶ 46 (when defendant is given choice of counsel or self-representation and he repeatedly rejects option of counsel, court may deem defendant to be electing self-representation " 'even if he stands mute when asked whether [self-representation] is indeed his choice.' " (quoting *United States v. Pittman*, 816 F.3d 419, 426 (6th Cir. 2016)); *United States v. Barton*, 712 F.3d 111, 118–19 (2d Cir. 2013) (defendant who repeatedly refused to cooperate with counsel, but who took no action to obtain new lawyer and refused to have one appointed, could be deemed to have knowingly and voluntarily waived right to counsel); *United States v. Garey*, 540 F.3d 1253, 1265 (11th Cir. 2008) ("it is possible for a valid waiver of counsel to occur not only when a cooperative defendant affirmatively invokes his right to self-representation, but also when an uncooperative defendant rejects the only counsel to which he is constitutionally entitled, understanding his only alternative is self-representation with its many attendant dangers").

¶ 40    We are not moved in the slightest by defendant's citation to his statements in the record (many of which we have detailed above) that he would not be representing himself, because he ("Andrew") was not present as a person but only as the "administrator" for the "entity" or "account" of "Andrew Slabon." Because it is undisputed, and was always obvious to the trial judges, that "Andrew" and "Andrew Slabon" were one and the same person, defendant's statements could only be construed as an unequivocal desire for self-representation.

¶ 41    Defendant next argues that defendant did not knowingly and intelligently waive his right to counsel. Defendant does not find fault with the Rule 401(a) admonishments given to him on September 11. Indeed, those admonishments were fully compliant with the rule; the court advised defendant of the nature of the misdemeanor charges against him, the possible sentences, and that he had "the absolute right to be represented by a lawyer in this case."

¶ 42    That would ordinarily be the end of the discussion, after the defendant acknowledges that he understands each of those correct admonishments. But, of course, in keeping with his stubborn refusal to acknowledge his true identity, defendant refused to respond to those admonishments. Still, we consider the record as a whole. See *Lesley*, 2018 IL 122100, ¶ 51 (determination of intelligent waiver of counsel depends on "the particular facts and circumstances of each case, including the background, experience, and conduct of the accused."); *Kidd*, 178 Ill. 2d at 104-05. And the record as a whole shows a knowing and intelligent waiver.

¶ 43    For one thing, defendant was advised more than once of the nature of the charges; he was well aware of the fact that he was accused of retail theft from a Kohl's department store, even acknowledging the presence of Kohl's employees who were present to testify against him at his first appearance. He was told more than once of his possible sentence. We would add that defendant was a veteran of the criminal courts, his history consisting of convictions for six

felonies (for at least one of which he likewise engaged in self-representation) and five misdemeanors. It is difficult to imagine that defendant was incapable of understanding that he was charged with these two misdemeanors and the possible sentence he faced.

¶ 44　We would add that, on December 4, defendant did affirmatively state that he understood the charges against him and the potential sentence he faced. True, that understanding was expressed in the context of a different set of admonishments concerning plea discussions, but the record reveals his understanding no less.

¶ 45　In any event, we are left with this: the Rule 401(a) admonishments were entirely accurate, and defendant does not argue otherwise; the misdemeanor charges against defendant were not complex in nature, nor was the potential sentence, unlike many cases we see; and defendant, as a veteran of the criminal courts, obviously would have no trouble understanding those correct admonishments. The simple fact that defendant refused to acknowledge his understanding when first admonished was not, in any way, an expression of confusion; it was just more gamesmanship by defendant that we will not reward.

¶ 46　Because the record shows that defendant did, in fact, unequivocally express his desire for self-representation, albeit in his own unique way, and because the record easily demonstrates that he knowingly and intelligently waived his right to counsel, we find no error.

¶ 47　　　　　　　　　　　　　　CONCLUSION

¶ 48　The judgment of the circuit court is affirmed.

¶ 49　Affirmed.